## 27190.   TANNER *v.* THE STATE.

DECIDED JANUARY 23, 1939.

*Eldon L. Bowen, Lee S. Purdom,* for plaintiff in error.

*John S. Gibson, solicitor-general,* contra.

MACINTYRE, J.   Dan Tanner was convicted of hog stealing. His motion for new trial was overruled, and he excepted.

Relative to the defendant's motion for a continuance, the brief of evidence contains the following: "Dan Tanner, called as a witness in his own behalf, testified after being duly sworn as follows: 'I am the defendant in this case.   I am not ready for trial.

I haven't got a witness here. Jim Petty is absent. He was in Waycross Friday. He has been summoned. He is sick. I don't think he is able to come to court. I haven't seen him since Friday. I saw him last Friday. I went to see him about my case. He said he would be here if he was able. He is not absent by my consent or procurement. I make this motion to get the witness here. I expect to have him here at the next term of court.' [Here the defendant stated relevant matter which he expected to prove by the witness.] Cross-examination: 'He was summoned last year, and he was sick then. For me to say, I don't know if he was ever summoned. To my knowing it he was never subpœnaed to come to court in this case. He was sick. I don't know what was the matter with him. He couldn't talk, only in a whisper. I don't know myself whether he was sick or not. I am not a doctor. He said he had a doctor. He was lying down when I was there. He was dressed, just lying down, like most all lazy negroes do, lying across the bed. He was sick. I know he was sick; he couldn't talk above a whisper. I didn't make any effort to see whether he was sick or not. Only he told me. I didn't get a doctor to find out. I have not seen him since. So far as I know he is in perfect health. . . If you will give me time, I will try to get Petty here or a certificate that he is sick.' The court: 'Gentlemen, your motion fails to come up to the rule, because it doesn't show that he was subpœnaed, and I overrule the motion.' Mr. Bowen: 'Your Honor, I can only state this: I got the subpœna for Petty before the last term of court, and we had a doctor's certificate here showing he was not able to come to court, and the case was continued for that reason at the last term.' The court: 'Well, there is no showing before the court that he was subpœnaed in this motion for continuance, and that is the reason I overruled the motion.' Mr. Purdom: 'If your Honor please, I will say this in my place as counsel, that Petty was here at one term of court, and he was here two or three terms. I will say that your Honor excused him one time where the State continued the case, and told Petty, together with the other witnesses, that they were excused for the term, but to return at a later time. Now, the record in the case will show whether he was subpœnaed.' Court adjourned for the day.

"April 13, 1938. The court: 'What do you say, gentlemen?' Mr. Bowen: 'If the court please, we can't do anything with the

defendant in the condition he seems to be in. We have been unable to get any sense out of him any way. He can't talk to us, so he is just out there in the room.' [Mr. Gibson: 'If your Honor please, the doctor has examined the defendant out there, and stated to the court that there is nothing wrong with him, and he is just stalling, and I want to say this further to the court; that on yesterday afternoon when this case was called he made a motion for continuance on the ground that his material witness was absent, and the court was generous enough to give him a bailiff, and sent a bailiff with him to Waycross to get that witness, and the court was acting in good faith, and presuming the defendant to be. What I am fixing to state in substance I can prove to you by the sworn testimony of the bailiffs of this court, that when they got to Waycross the defendant went in the house and came back and reported the witness not to be there, directing the bailiff off the other direction to permit the witness to slip out the other way and the bailiff got wise to it some way and turned and made him go back and found the witness right out from the house about a hundred yards. In other words, to make it short with the court, he tried to deceive the bailiff and tried to get the witness away where he couldn't get him on yesterday afternoon, and he followed that up on the streets this morning. . . I can prove that by different people in the court-room, or there's been two or three told me they saw him not thirty minutes before court seemingly in good shape, and now he comes up here and claims he is sick, and the doctor says he is not sick, and I want to ask the court to put him on trial. I don't think there is a thing in the world wrong with him.' The court: 'Well, the report to the court by the doctor, is that he is a normal man, and his condition is all right. That was what the doctor reported to the court. I sent the doctor and the sheriff and the bailiff down to his house and the doctor examined him and said he was normal, and the sheriff tells me that's his opinion about it, and the bailiff also. Of course, I don't know whether there is anything the matter with him or not. The only thing I have to go by is what the doctor tells me, and what people who have observed him tell me. The information from the good citizens of this county that he passed this morning about thirty minutes before I sent the doctor down there, and he was walking on the street, walking as usual, except a little fast, and all the information the court can get, and I

have undertaken to get all I can, even the expert testimony, is that he is a normal man. That being true, we will have to try his case. Call a list of forty-eight jurors, Mr. Clerk, and bring the defendant into court.'] Mr. Purdom: 'If your Honor please, we are not ready to go to trial at this time.' The court: 'Submit your showing for a continuance, if you have got any.' Mr. Purdom: 'For the following reasons, that we are not ready. The defendant is apparently sick. Counsel and myself, Judge E. L. Bowen, have made a number of efforts within the last short period of time to try and communicate with the defendant. We have been unable to get him to say a word or to do anything at all, and we offer him as an exhibit to the court in his present condition, of which the court can see as it will not be apparently fair to counsel for us to go to trial and attempt to defend a client in this present condition. I understand, I wish to say, that a doctor has made some examination of him. We haven't had an opportunity to question this doctor, or to find out anything that he found was the matter with him, if anything. We haven't had an opportunity to confer with him, or the doctor has not, according to our best information and belief, been sworn or given any evidence in court at all, and we respectfully ask that the court have the defendant examined by a competent physician who has been treating him. I have all respect in the world for Dr. Hawkins, who I understand did examine him, but Dr. Hawkins doesn't know the history of the case, and has not been treating the defendant at any time previously to this; but Dr. Hendry has, and if it would be possible to have the defendant examined by both Dr. Hawkins and Dr. Hendry who knows something of the history of the case, we would perhaps get something better. If the defendant is assuming, I think he should go on trial, even though in the condition he is. If he is not, and is afflicted anywhere halfway like he appears that he is, it would be a miscarriage of justice to the highest extent to try to put him on trial and have him be tried for such a serious offense which he is charged.' The court: 'Do you want to cross-examine the doctor that examined him?' Mr. Purdom: 'I think we should have the right to have the doctor sworn and cross-examined.' The court: 'Get Dr. Hawkins and tell him to come over right at once, and if you can reach Dr. Hendry tell him to come here too.' Dr. Hawkins, being first sworn, testified: 'I am a medical doctor, I have

been practicing twenty-seven years. I have practiced in this county thirteen years, since 1924. I know Dan Tanner, I made a professional call and medical examination on him this morning. Since he has claimed to be ill. . . From my examination of him, and my opinion based on my examination and my professional knowledge, he is malingering, there is nothing the matter with him, and he is able to go to trial. That is my opinion. I did not take his temperature, but he did not appear to have any. I would consider his condition in average health.' . . Mr. Purdom: 'May it please your Honor, we would want this defendant examined, in all fairness to the court and also to the defendant, by his regular practicing physician that has been treating him for some time past, Dr. G. T. Hendry, a competent practicing physician of this town, and who knows the history of his case from his past. We would like the examination by him if it would be possible.' The court: 'The motion for a continuance is overruled in this case. Gentlemen, I am going to ask Dr. Hawkins to stay around in the courtroom as much as possible so he can administer to Mr. Tanner, if he needs it.' At this time court adjourned about an hour and half for lunch, and after convening Dr. Hawkins again examined the defendant and reported to the court and the trial was ordered to proceed." The jury was then impaneled and sworn, witnesses were introduced and the trial proceeded. The record also discloses that although the witness, on account of whose absence the defendant had first moved for a continuance, had been brought into court by an officer of the court, he did not testify in the case. After two examinations the doctor gave it as his opinion that the defendant, when placed on trial, was feigning sickness, that he was normal, that he was in possession of his faculties, and that he was able to intelligently confer with counsel. The court instructed the doctor to stay around in the court-room as much as possible so he could administer to the defendant if necessary, however, the record does not disclose that it was ever necessary for the doctor to administer to the defendant during the trial. There were circumstances relative to the motion for a continuance appearing in the brief of evidence and quoted above which were very unusual and which were of such a character as would have authorized the court to find that they very strongly corroborated the doctor's opinion that the defendant was feigning sickness. Under the record, we can not say that

the court abused its discretion in requiring the defendant to go to trial.

■ The parts of the statements of the solocitor-general and the judge contained in brackets in the quoted part of the record appearing in division 1, supra, of this opinion were excepted to on the ground that they were made "in the presence of the jury, before the same was impaneled, was never substantiated by proof, and was highly prejudicial to the defendant and could only tend to prejudice the minds of the jury against the defendant." The statements excepted to were made before the jury were called, before the panel was put on the defendant, before the case was ordered to trial, and in the presence of the defendant and his counsel. No objection of any kind was made to the jurors before verdict, either collectively or singly. It does not appear that the voir dire disclosed a disqualification of any of the jurors or that the defendant or his counsel asked or moved the court to act as trior, and, as such trior, to allow the defendant to ask the juror, who had been put on his voir dire, questions other than those allowed by statute, and thus extend the examination beyond the voir dire questions in order to ascertain whether or not the juror was in fact disqualified. If any of the jurors, by reason of having heard the statements of the solicitor-general and the judge, were disqualified, a proper, timely objection should have been made, and the defendant should not have waited until after verdict to raise the question. *Jones* v. *State*, 90 *Ga.* 616, 625 (16 S. E. 380). The refusal of the judge to grant a new trial on the ground of the alleged disqualification of jurors was not error.

■ The rulings announced in headnotes 3, 4, and 5 do not require elaboration.

*Judgment affirmed.* *Broyles, C. J., and Guerry, J., concur.*